IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| JOSHUA GILSON, § | |
|     Plaintiff, § | |
| § | |
| v. § | EP-21-CV-00110-DCG-ATB |
| § | |
| MANUEL ALVAREZ, IV and JOSEPH A. § | |
| BARRON, § | |
|     Defendants. § | |

## REPORT AND RECOMMENDATION
## OF THE MAGISTRATE JUDGE

On this day, the Court considered Defendants' Second Motion to Dismiss (ECF No. 30), filed by Defendants Manuel Alvarez IV ("Alvarez") and Joseph A. Barron ("Barron") (collectively "Defendants"). The matter was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas for a Report and Recommendation on March 24, 2022, by United States District Judge David C. Guaderrama. (ECF No. 34).

For the reasons set forth below, the Court **RECOMMENDS** that Defendants' Second Motion to Dismiss be **GRANTED**.

## I.   BACKGROUND

### a.   Procedural Background

On May 18, 2021, Plaintiff Joshua Gilson ("Gilson") filed his "Plaintiff's Original Complaint," alleging claims against several defendants that he "was deprived of his rights secured by the First, Fourth, and Fifth Amendments to the U.S. Constitution and seek[ing] recovery for the injuries he suffered." (ECF No. 1, p. 3). Defendants Alvarez and Barron, along with several other defendants, filed their "Defendants' Motion to Dismiss" on December 14, 2021. (ECF No. 22).

Thereafter, on January 11, 2022, Gilson filed "Plaintiff's Unopposed Motion for Leave to File Amended Complaint" ("Amended Complaint") (ECF No. 23), which the District Court granted (Text Order dated January 18, 2022). Gilson's Amended Complaint was filed on January 18, 2022. (ECF No. 27).

In his Amended Complaint, Gilson alleges claims against only Defendants Alvarez and Barron, specifically alleging that he "was deprived of his rights secured by the U.S. Constitution, assaulted by Agent Manuel Alvarez and seeks recovery for the injuries he suffered." (*Id.* at p. 3).

On February 2, 2022, Defendants Alvarez and Barron filed their "Defendants' Second Motion to Dismiss" seeking to dismiss Gilson's Amended Complaint for failure to state a claim and qualified immunity. (ECF No. 30). Gilson filed his "Plaintiff's Response to Defendant's Second Motion to Dismiss" ("Response") on February 16, 2022. (ECF No. 31). On February 25, 2022, Defendants filed their "Defendants' Reply to Plaintiff's Response to Defendants' Second Motion to Dismiss" ("Reply"). (ECF No. 33).

      **b.    Factual Background[1]**

In his Complaint, Gilson claims that he was "unlawfully detained, and brutally and inhumanely beaten by the named federal officer." (ECF No. 27, p. 1). Specifically, on July 15, 2019, Gilson contacted the border patrol facility and local police to "notify them he was planning a protest and [to] find out if there were any special rules that needed to be followed" to protest at the facility. (*Id.* at p. 2). Prior to arriving at the facility, Gilson had posted on Facebook that he was "mad as hell and was going to . . . peacefully liberate . . ." the facility. (*Id.*) (alterations in original).

---

[1] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

Gilson arrived at the facility on July 15, 2019, at 5:30 P.M. (*Id.*). Upon arriving at the facility, Gilson was questioned by El Paso County Sheriff's Deputies, who allowed Gilson to proceed. (*Id.*). Gilson "walked along the public road way to picket the [facility]" and carried a sign that stated, "Liberate the concentration camp . . . prosecute the guards . . . nothing else will do." (*Id.*) (alternations in original).

Thereafter, Supervisory Border Patrol Agent ("SBPA") Barron "ordered men to 'move in' on Mr. Gilson based on the 'blunt' object and the threats on Facebook." (*Id.*). Gilson complied with the SBPA's commands and "never resisted." (*Id.*).[2]

While detained, Gilson was "'escorted' by BPA Manuel Alvarez who told him to hurry up, then pushed Mr. Gilson to the ground for failure to move faster." (*Id.* at p. 3). Gilson alleges "[t]his assault caused pain" and that his fall was due to being "pushed from behind while trying to walk in the custody of Agent Alvarez," contrary to what "Alvarez states in his memorandum to his supervisor." (*Id.*). Gilson also alleges that Barron states in a memorandum that "Gilson 'fell' on his own." (*Id.*).

After he was pushed to the ground, Gilson "was struck in the abdomen by someone," which "caused pain." (*Id.*). Gilson alleges that "Defendant Barron upon information and belief either struck Mr. Gilson or knowingly participated in the covering up of the assault by Defendant Alvarez." (*Id.*).

Thereafter, Gilson "was prosecuted federally," but "was acquitted by a jury of his peers." (*Id.*).

---

[2] Gilson also makes allegations surrounding the denial of medication and medical treatment. *See* (ECF No. 27, p. 2). However, Gilson does not allege that either Defendant Alvarez or Barron were present during these incidents. (*Id.*) (attributing the alleged denial of medication and medical treatment to BPA John Doe, and FBI agents Issac Frost and Shannon Enochs). Since these allegations appear to be against non-parties to this suit, the Court will not address them further in this Report and Recommendation.

## II. LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint when a defendant shows that the plaintiff has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual matter contained in the complaint must allege actual facts, not legal conclusions masquerading as facts. *Id.* at 678 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Twombly*, 550 U.S. at 555)).

To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Gregson v. Zurich Am. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted). A complaint states a "plausible claim for relief" when the factual allegations contained therein infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 678. The complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

In his Complaint, Gilson's claim that he was "unlawfully detained" centers around his allegation that Defendant Barron "ordered men to 'move in' on Mr. Gilson based on the 'blunt'

object and the threats on Facebook." (ECF No. 27, p. 1-2).³ Therefore, Gilson's Fourth Amendment false arrest claim is only alleged against Defendant Barron.

Gilson also alleges that he was "brutally and inhumanely beaten." (*Id.* at p. 1). Specifically, Gilson alleges that while Defendant Alvarez was escorting him, Alvarez "pushed Mr. Gilson to the ground for failure to move faster" after Alvarez had "told him to hurry up." (*Id.* at p. 3). Gilson alleges that after he was pushed to the ground, he "was stuck in the abdomen by someone" and heard Defendant Barron state "I didn't see anything." (*Id.*). Further, Gilson alleges that Defendants Barron and Alvarez were both nearby, and therefore Barron "either struck Mr. Gilson" himself, or "participated in the covering up of the assault by Defendant Alvarez." (*Id.*).

---

³ The Court finds that specifics regarding this "blunt" object are ambiguous. First, Gilson states in his Complaint that he "uses a cane to walk," but never identifies that the "blunt" object on the day in question was his cane. *See* (ECF No. 27, p. 2). However, in his Response, Gilson characterizes Defendants' position as "Border Patrol Agents . . . defending Governmental property from a man with a cane," suggesting Gilson is asserting that the "blunt" object was his cane. *See* (ECF No. 31, p. 2).

Defendants, on the other hand, argue that the "blunt" object was a crowbar. Defendants ask this Court to take judicial notice of "the criminal case of *United States of America v. Joshua David Gilson*, EP-19-MJ-7320-RFC," specifically that "the Government listed a crowbar in its Amended List of Proposed Exhibits." (ECF No. 30, p. 2 n.2).

Pursuant to Federal Rule of Evidence 201, this Court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be questioned." Fed. R. Evid. 201(b). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Furthermore, the Court may take judicial notice "at any stage of the proceeding." Fed. R. Evid. 201(d).

Here, the Court fails to see how a listing on a proposed exhibit list at a criminal trial constitutes a fact "generally known" or a fact that can be "accurately and readily determined." There was no judicial finding that the blunt object was a crowbar, nor did the jury make such finding. In fact, the jury found Gilson not guilty, and a judgment of acquittal was entered. *See United States v. Gilson*, EP-19-MJ-7320-RFC, ECF No. 34 (W.D. Tex. Nov. 22, 2019) (verdict form finding Gilson not guilty); *United States v. Gilson*, EP-19-MJ-7320-RFC, ECF No. 36 (W.D. Tex. Nov. 22, 2019) (judgment of acquittal).

Therefore, the Court here finds that the proposition that the Government's description of an exhibit as a "crowbar" necessarily means that the "blunt" object Gilson carried was a crowbar is not a *fact* that is generally known or that can be accurately and readily determined. Accordingly, the Court declines to take judicial notice of the "Amended List of Proposed Exhibits" in Gilson's underlying criminal case.

Gilson asserts that his suit against Defendants, two Border Patrol agents, is being "brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)." (*Id.* at p. 1).

In *Bivens*, the Supreme Court authorized a damages remedy, "even absent statutory authorization," where a federal actor violated a person's Fourth Amendment protections against unreasonable searches and seizures. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (citing *Bivens*, 403 U.S. at 397). The Supreme Court later held that such an implied remedy also exists under the Fifth Amendment Due Process Clause and the Eighth Amendment Cruel and Unusual Punishment Clause. *Id.* at 1854-55 (citing *Davis v. Passman*, 442 U.S. 228, 231, 248-49 (1979) (regarding the Fifth Amendment), and *Carlson v. Green*, 446 U.S. 14, 16-23 (1980) (regarding the Eighth Amendment)).

Outside these cases, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). In fact, the Supreme Court has held that "expanding the *Bivens* remedy is now considered a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857.

A new context for *Bivens* exists "[i]f the case is different in a meaningful way from previous *Bivens* cases." *Id.* at 1859. However, Courts shall not extend *Bivens* to a new context if "special factors counsel[] hesitation in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396. This "special factors" inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed," or whether an "alternative remedial structure" exists. *Abbasi*, 137 S. Ct. at 1857-58. The special factors inquiry is important because "it is a significant step under separation-of-powers principles for a court to determine that it has the authority . . . to

create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation," as opposed to Congress doing so. *Id.* at 1856.

Here, although Gilson raises general legal claims that he "was deprived of his rights secured by the U.S. Constitution, assaulted by Agent Manuel Alvarez and seeks recovery for the injuries he suffered" (ECF No. 27, p. 3), the Court finds that Gilson has alleged a Fourth Amendment false arrest claim against Defendant Barron and Fourth Amendment excessive force claims against Defendants Alvarez and Barron. *See Groden v. City of Dallas, Tex.*, 826 F.3d 280, 284 (5th Cir. 2016) ("Further, the Supreme Court held that when a complaint contains sufficient '*factual* allegations,' a court should not grant a motion to dismiss 'for imperfect statement of the legal theory supporting the claim asserted.'") (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11-12 (2014) (emphasis original)); *see also* (ECF No. 31, p. 4) (Plaintiff's Response stating that "Mr. Gilson clearly delineates in his petition that the violations of his rights [were] his seizure and assault.").

To determine whether Defendants can be held liable under *Bivens* depends first on whether Gilson's claims fall within the existing purview of *Bivens*, and if not, whether an extension of *Bivens* is warranted under the special factors analysis. *Abbasi*, 137 S. Ct. at 1860. If *Bivens* applies or an extension is warranted, then the Court must determine whether Gilson has an adequate

remedy available to him to protect his interests as an alleged injured party. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020).[4]

### a. New *Bivens* Context

Defendants argue in their Motion that "Plaintiff's allegations under the Fourth Amendment differ from *Bivens* in several meaningful ways." (ECF No. 30, p. 9). Specifically, Defendants note that "this case arose outside of a Border Patrol station, [and that] Plaintiff does not allege the BPAs entered his home without a warrant, as was the case in *Bivens*." (*Id.*). Further, Defendants argue that "[t]he BPAs were protecting Government property, not making a warrantless search for narcotics, as in *Bivens*." (*Id.*).

In *Bivens*, the Supreme Court held that "a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages . . . even though no federal statute authorized such a claim." *Hernandez*, 140 S. Ct. at 741 (citing *Bivens*, 403 U.S. at 388). However, a new context for *Bivens* exists "[i]f the case is different in a meaningful way from previous *Bivens* cases." *Abbasi*, 137 S. Ct. at 1859. "[D]ifferences that are meaningful enough to make a given context a new one," include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion

---

[4] The Court here notes that the Supreme Court has recently held that "[w]hile our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 142 S. Ct. 1793, 596 U.S. ___, slip op. at 7 (2022)

However, as Justice Gorsuch notes in his concurring opinion, "[i]t seems to me that to ask the question is to answer it. To create a new cause of action is to assign new private rights and liabilities—a power that is in every meaningful sense an act of legislation." *Id.* at 3 (Gorsuch, J. concurring); *see also id.* at 15 (Sotomayor, J. dissenting) ("That approach contrasts starkly with the standard the Court announced in *Ziglar* and applied in *Hernandez*.").

For reasons of clarity, the Court here will apply the two-step inquiry as outlined by the Supreme Court in *Abbasi* and *Hernandez* to reach its conclusion as to whether Congress might be better equipped to create a damages remedy in the instant case.

>by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859-60.

Here, the Court finds that Gilson's claims present a new *Bivens* context as they are meaningfully different from previous *Bivens* cases. Although a *Bivens* remedy has been permitted under the Fourth Amendment, the Court notes that "it is not enough even if 'a plaintiff asserts a violation of the same clause of the same amendment in the same way.'" *See Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2669 (2021), *reh'g denied*, 141 S. Ct. 2886 (2021) (*quoting Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019)). Unlike *Bivens*, the Defendant officers here are Border Patrol agents and not federal narcotics agents. Further, Gilson's claims arise from an incident outside of a border patrol station, not a private home. There was also no evidence of a strip-search here as there was in *Bivens*. Accordingly, the Court finds that Gilson's claims against Defendants are meaningfully different and therefore present a new *Bivens* context.

    **b.**     ***Bivens* Extension**

    *1.*     ***Special Factors Analysis***

Since the Court finds that Gilson's false arrest claim does not fall within the existing purview of *Bivens*, the Court must analyze whether an extension of *Bivens* is warranted under the special factors analysis. *See Abbasi*, 137 S. Ct. at 1860.

The Supreme Court has held that "expanding the *Bivens* remedy is now considered a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857. Courts shall not extend *Bivens* to a new context if "special factors counsel[] hesitation in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396. This "special factors" inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and

9

benefits of allowing a damages action to proceed," or whether an "alternative remedial structure" exists. *Abbasi*, 137 S. Ct. at 1857-58.

Here, the Court finds that special factors counsel hesitation in extending a *Bivens* remedy against the two Border Patrol agents. Notably, the Supreme Court has held, even in "more 'conventional' excessive-force claim" cases that "the Judiciary is comparatively ill suited to decide whether a damages remedy against *any* Border Patrol agent is appropriate." *Egbert v. Boule*, 142 S. Ct. 1793, 596 U.S. ___, slip op. at 10 (2022) (emphasis added); *see De La Paz v. Coy*, 786 F.3d 367, 377 (5th Cir. 2015) (noting that Congress has not created a damages remedy against immigration agents despite legislative attention to immigration matters).

Here, both Defendants are Border Patrol agents, and therefore the Court finds, in following Supreme Court precedent, that courts are not competent to authorize a damages action against Border Patrol agents without affirmative action by Congress. *See Egbert*, 142 S. Ct. 596 U.S. ___, slip op. at 11-12 ("[W]e ask here whether a court is competent to authorize a damages action not just against Agent Egbert but against Border Patrol agents generally. The answer, plainly, is no."). Furthermore, the Court notes that it "may not create [a cause of action], no matter how desirable that might be as a policy matter." *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). Therefore, the Court finds that special factors weigh against extending *Bivens* to the instant case. Accordingly, the Court recommends granting Defendants' Second Motion to Dismiss on this ground.

### 2. *Alternative Remedial Structure*

Further, the Supreme Court has held that "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 137 S. Ct. at 1858. "For if Congress has created 'any alternative, existing

process for protecting the injured party's interest' that itself may 'amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.* (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)) (alterations omitted).

Here, Defendants posit two possible alternative remedial structures: 1) the Federal Tort Claims Act ("FTCA"); and 2) the U.S. Customs and Border Protection's ("CBP") programs for customer complaints.

As for the FTCA, the Court notes that there appears to be current conflict between the Supreme Court and Fifth Circuit as to whether the FTCA provides a proper alternative remedial structure. *Compare Carlson v. Green*, 446 U.S. 14, 19-23 (1980) (finding that the FTCA is not a proper alternative remedial structure as to bar a *Bivens* action), *with Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (finding that the FTCA was evidence of "the existence of a statutory scheme for torts committed by federal officers"). However, the Court here declines to analyze the current apparent conflict, as the Court finds that a ruling on the issue is not necessary if an alternative remedial structure is provided elsewhere.

As for the CBP programs for customer complaints, Defendants argue that "CBP provides Passenger Service Representatives, Comment Cards, a CBP INFO Center, and a program where port directors and supervisors personally respond to telephone and verbal complaints." (ECF No. 30, p. 11). Further, Defendants state that "Gilson has the option of calling the Station directly to make a complaint," and that "CBP will take appropriate action against the employee" facing allegations of "misconduct or discrimination." (*Id.* at p. 12).

The Supreme Court has held that "[t]he U.S. Border Patrol is statutorily obligated to 'control, direc[t], and supervis[e] . . . all employees.'" *Egbert*, 142 S. Ct. 1793, 596 U.S. ___, slip op. at 12 (quoting 8 U.S.C. § 1103(a)(2)) (alterations in original). Furthermore, "by regulation,

11

Border Patrol must investigate '[a]lleged violations of the standards for enforcement activities' and accept grievances from '[a]ny persons wishing to lodge a complaint.'" *Id.* at 12-13 (quoting 8 C.F.R. § 287.10(a)-(b)) (alterations in original). The Supreme Court also affirmed that it has "never held that a *Bivens* alternative must afford rights to participation or appeal." *Id.* at 13. Finally, "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts. So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.*

Here, in sum, the Court finds that Gilson has the same "alternative remedy" against the Border Patrol agent Defendants here as the Supreme Court recognized that the plaintiff had against the defendant Border Patrol agent in *Egbert v. Boule*. Therefore, the Court finds that Gilson does not have a *Bivens* claim against Defendants since extending *Bivens* is disfavored when Gilson already has an adequate alternative remedy for his claims. Accordingly, the Court recommends granting Defendants' Second Motion to Dismiss on this ground.

    **c.**    **Qualified Immunity**

Defendants argue that they are entitled to qualified immunity because "Plaintiff makes very limited allegations of Defendants' personal involvement in any violation of constitutional rights." (ECF No. 30, p. 15). In response, Plaintiff argues that "[s]triking an individual in custody and denying it would be a constitutional violation of the detained individual's rights." (ECF No. 31, p. 4).

Qualified immunity protects "[government] officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Jackson v. City of*

*Hearne, Tex.*, 959 F.3d 194, 200 (5th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "[L]ower courts have discretion to decide which of the two prongs of [the qualified immunity] analysis to tackle first." *Id.* at 201.

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 200-01 (internal citation omitted) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Further, "an officer might lose qualified immunity even if there is no reported case 'directly on point.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (quoting *Ashcroft*, 563 U.S. at 741). However, "in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent." *Id.* (internal quotes omitted).

Here, Gilson alleges that he was "unlawfully detained" and that he was "brutally and inhumanely beaten." (ECF No. 27, p. 1). However, as discussed above, the Court has failed to find that Gilson has a *Bivens* remedy against Defendants. Therefore, the Court finds that Gilson has not met his burden to overcome Defendants' qualified immunity defense. *See Rhodes v. Prince*, 360 Fed. App'x 555, 558 (5th Cir. 2010) ("If we determine that no constitutional violation occurred, our [qualified immunity] inquiry ends."). Accordingly, the Court recommends that Defendants' Second Motion to Dismiss be granted based on qualified immunity.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Gilson's claims against Defendants constitute a new *Bivens* context. Further, the Court finds that special factors weigh against, and the availability of an alternative remedial structure precludes, granting an extension of *Bivens*.

Finally, since no *Bivens* remedy is available, the Court finds that Defendants are entitled to qualified immunity.

Accordingly, the Court **RECOMMENDS** that Defendants' Second Motion to Dismiss be **GRANTED.**

**SIGNED** and **ENTERED** this 30th day of June, 2022.

        **ANNE T. BERTON**
        **UNITED STATES MAGISTRATE JUDGE**

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**