UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **JOSHUA GILSON**, | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | |
| | § | **EP-21-CV-00110-DCG** |
| **MANUEL ALVAREZ, IV** and | § | |
| **JOSEPH A. BARRON**, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Joshua Gilson sued two Border Patrol Agents (Defendants Manuel Alvarez, IV and Joseph A. Barron) for allegedly violating his constitutional rights. Am. Compl., ECF No. 27. Specifically, Gilson alleges that Defendants "unlawfully detained" and "brutally and inhumanely beat[]" him. *Id.* at 1. Defendants move to dismiss Gilson's claims. Mot., ECF No. 30.

The Court referred Defendants' Motion to Dismiss to U.S. Magistrate Judge Anne T. Berton for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). ECF No. 34. The Magistrate Judge duly issued a Report and Recommendation advising the Court to grant the Motion and dismiss Gilson's claims. R. & R., ECF No. 35.

Gilson objects to the Magistrate Judge's Report and Recommendation. Obj., ECF No. 36. After carefully reviewing the Report and Recommendation, the parties' filings, and applicable precedent, the Court **OVERRULES** Gilson's objections, **ACCEPTS** the Magistrate Judge's Report and Recommendation, and **GRANTS** Defendants' Motion to Dismiss.

# I.    BACKGROUND[1]

On July 15, 2019, Gilson staged a protest at the Border Patrol Station in Clint, Texas.[2] Am. Compl. at 2.  Before arriving at the Station, Gilson posted on Facebook that "he was 'mad as hell and was going to peacefully liberate'" the Station.  *Id.* (cleaned up).  During his protest, Gilson displayed a sign that read "Liberate the Concentration Camp . . . Prosecute the Guards . . . Nothing Else Will Do."  *Id.*

During Gilson's demonstration, Defendant Barron "ordered men to 'move in' on Mr. Gilson based on the 'blunt' object[3] and the threats on Facebook."  *Id.*  Various Border Patrol Agents[4] then "approached and handcuffed" him.  *Id.*  Gilson insists that he complied with the Agents' commands without resisting.  *Id.*

Gilson alleges that, while moving him from one location to another, Defendant Alvarez "told [Gilson] to hurry up, then pushed Mr. Gilson to the ground for failure to move faster," causing Gilson to suffer pain.  *Id.* at 3.  Then, an unidentified assailant—whom Gilson alleges upon information and belief was either Defendant Barron or Defendant Alvarez—struck Gilson

---

[1] The Court takes the following facts from Gilson's Amended Complaint.  For the purposes of ruling on Defendants' Motion to Dismiss, the Court assumes all non-conclusory factual allegations in the Amended Complaint are true.  *See, e.g.*, *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020).

[2] Gilson's Amended Complaint alleges that his protest occurred at the "Clint Concentration Camp."  Am. Compl. at 2.  Defendants and the Magistrate Judge have assumed that "Clint Concentration Camp" refers to the Border Patrol facility in Clint, Texas.  *See* Mot. at 1; R. & R. at 2.  The Court proceeds on the same assumption.

[3] As the Report and Recommendation explains, it is unclear what "the 'blunt' object" refers to. R. & R. at 5 n.3.  The answer to that question is immaterial for the purposes of this Order.

[4] Gilson identifies those agents as Luis Agrinsoni, Carlos Lara, and Jose Apodaca.  Am. Compl. at 2.  The Amended Complaint asserts that these agents illegally detained him.  *Id.*  A previous iteration of Gilson's complaint named those three agents as defendants, Compl., ECF No. 1, at 1, but Gilson later filed a notice dismissing those agents from the case.  Notice, ECF No. 24.  The operative complaint does not name those agents as defendants in the case caption.  *See* Am. Compl. at 1.  Thus, the Court does not construe the Amended Complaint to raise claims against Agent Agrinsoni, Agent Lara, or Agent Apodaca.

in the abdomen.  *Id.*

Based on his actions during the protest, the United States charged Gilson with the misdemeanor offense of attempting to "willfully injure and commit depredations against property of the United States."  Crim. Compl., *United States v. Gilson*, No. 3:19-mj-07320 (W.D. Tex. July 17, 2019), ECF No. 1.  A jury ultimately acquitted Gilson.  J. of Acquittal, No. 3:19-mj-07320 (W.D. Tex. Nov. 22, 2019), ECF No. 36.

Invoking the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)—which this Court discusses in greater detail below—Gilson sued Agents Alvarez and Barron for allegedly depriving him of his constitutional rights.  Am. Compl. at 3.  Although the Amended Complaint contains passing references to the First Amendment, it does not specify which constitutional provisions Defendants allegedly violated.  *See* Am. Compl. at 1–4 (alleging generically that "Mr. Gilson was deprived of *his rights secured by the U.S. Constitution*") (emphasis added).  The Magistrate Judge construed the Amended Complaint to raise two categories of claims:

(1)     A **Fourth Amendment false arrest** claim against Agent Barron alone; and

(2)     **Fourth Amendment excessive force** claims against both Agent Barron and Agent Alvarez.

R. & R. at 7.  Gilson does not dispute the Magistrate Judge's characterization of his claims, so the Court likewise construes the Amended Complaint to raise Fourth Amendment claims only.[5]

*See* Obj. at 1–5; *see also id.* at 2 (acknowledging that Gilson's claims "revolve around the Fourth

---

[5] As the Magistrate Judge observed, R. & R. at 3 n.2, the Amended Complaint also contains stray allegations that other unidentified Border Patrol Agents and two FBI agents denied him adequate medical care while he was in custody.  *See* Am. Compl. at 2–3.  Because the Amended Complaint does not name these agents as defendants, *see* Am. Compl. at 1, the Magistrate Judge didn't construe the Amended Complaint to raise a claim alleging inadequate medical care.  R. & R. at 3 n.2.  Gilson didn't object to that aspect of the Magistrate Judge's Report and Recommendation, *see* Obj. at 1–5, so the Court accepts the Magistrate Judge's conclusion that the operative complaint does not raise any medical care claims.

Amendment").

## II.    STANDARD OF REVIEW

### A.    Review of a Report and Recommendation

Where, as here, a party files a timely written objection to a Magistrate Judge's report and recommendation, the District Judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The District Judge "may accept, reject, or modify" the Magistrate Judge's findings and recommendations "in whole or in part." *Id.* The District Judge evaluates "any unobjected-to portions of" the Magistrate Judge's report under "a 'clearly erroneous' and 'contrary to law' standard of review." *E.R. v. Jasso*, 573 F. Supp. 3d 1117, 1129 (W.D. Tex. 2021) (quoting *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989)).

### B.    Federal Rule of Civil Procedure 12(b)(6)

Defendants move to dismiss Gilson's claims under Federal Rule of Civil Procedure 12(b)(6), which empowers the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept the complaint's well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022). The Court need not, however, accept the complaint's *legal conclusions* as true. *Iqbal*, 556 U.S. at 678. Nor are conclusory factual allegations entitled to the presumption of truth. *E.g.*, *Arnold*, 979 F.3d at 266.

4

## III.     ANALYSIS

**A.     *Bivens***

**1.     Legal Standard**

As noted above, Gilson bases his claims on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Am. Compl. at 1.  The petitioner in *Bivens* claimed that "agents of the Federal Bureau of Narcotics[,] acting under claim of federal authority, entered his apartment and arrested him for alleged narcotics violations."  403 U.S. at 389.  The agents "manacled petitioner in front of his wife and children[] and threatened to arrest his entire family.  They searched the apartment from stern to stern.  Thereafter, petitioner was taken to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search."  *Id.*  The petitioner then sued the agents for allegedly:

(1)     Violating the Fourth Amendment's prohibition against unreasonable searches and seizures;

(2)     Conducting the arrest and search without a warrant;

(3)     Using unreasonable force when arresting the petitioner; and

(4)     Arresting the petitioner without probable cause.

*Id.*

The *Bivens* Court ruled that the federal agents' alleged violation of the Fourth Amendment gave "rise to a cause of action for damages consequent upon [the agents'] unconstitutional conduct."  *Id.*  "Although 'the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages,' the Court 'held that it could authorize a remedy under general principles of federal jurisdiction.'" *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) (internal citations omitted).

In the intervening decades, however, the Supreme Court has stressed repeatedly that

"recognizing a cause of action under *Bivens*" for other alleged constitutional violations "is 'a disfavored judicial activity.'" *Id.* at 1803 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856–57 (2017)).  Since deciding *Bivens*, the Supreme Court has recognized similar causes of action for only two other constitutional violations:

> (1)   Sex discrimination under the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979); and
>
> (2)   Inadequate care of a federal prisoner under the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980).

*Id.* at 1802.  By contrast, the Supreme Court has "declined . . . to imply a similar cause of action for other alleged constitutional violations" on no fewer than a dozen occasions over the past four decades.  *Id.* at 1799; *see also Cantú v. Moody*, 933 F.3d 414, 421 (5th Cir. 2019) ("Since 1980, . . . 'the Court has refused' every *Bivens* claim presented to it.") (quoting *Abbasi*, 137 S. Ct. at 1857).

### a.    New *Bivens* Context

Courts apply a two-step framework when evaluating whether to recognize a *Bivens* remedy for an alleged constitutional violation.  *Egbert*, 142 S. Ct. at 1803.  First, the court determines "whether the case presents 'a new *Bivens* context'"—that is, whether the case is "'meaningful[ly]' different from the three cases in which the [Supreme] Court has implied a damages action."  *Id.* (quoting *Abbasi*, 137 S. Ct. at 1859–60).  Courts consider the following factors when assessing whether a lawsuit "differ[s] in a meaningful way" from the few cases in which the Court has recognized a *Bivens* remedy:

> (1)    The rank of the officers involved;
>
> (2)    The constitutional right at issue;
>
> (3)    The generality or specificity of the official action;

(4)     The extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted;

(5)     The statutory or other legal mandate under which the officer was operating;

(6)     The risk of disruptive intrusion by the Judiciary into the functioning of other branches; and

(7)     The presence of potential special factors that previous *Bivens* cases did not consider.[6]

*Abbasi*, 137 S. Ct. at 1860.  The Supreme Court has stressed, however, that these factors are not exhaustive.  *Id.* at 1859.

Applying this test, the Fifth Circuit has opined that "*Bivens* claims generally are limited to the circumstances of the Supreme Court's trilogy of cases in this area:"

(1)     "[M]anacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment;"

(2)     "[D]iscrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment;" and

(3)     "[F]ailure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment."

*Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (internal citations omitted).  "Virtually everything else is a 'new context.'"  *Id.* (quoting *Abbasi*, 137 S. Ct. at 1865).

### b.     Special Factors

If a case presents a new *Bivens* context, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Egbert*, 142 S. Ct. at 1803 (quoting *Abbasi*, 137 S. Ct. at 1858).  "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy."  *Id.* (quoting

---

[6] This Court will refer to these considerations as the "*Abbasi* factors."

*Hernández v. Mesa*, 140 S. Ct. 735, 743 (2020)).

"[M]aintaining the separation of powers" is "at the core of the special factors analysis." *Canada v. United States*, 950 F.3d 299, 309, 312 (5th Cir. 2020). If recognizing a new *Bivens* cause of action would "risk improperly entangling courts in matters committed to other branches," the judiciary should not create such a remedy. *Butler v. Porter*, 999 F.3d 287, 295 (5th Cir. 2021).

Courts also examine "whether alternative remedies exist for protecting th[e] right" the plaintiff seeks to vindicate. *Id.* at 294. "[A] court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert*, 142 S. Ct. at 1804. "Although an alternative form of relief is not a necessary special factor" to defeat a *Bivens* claim, "it may be a sufficient one." *Oliva*, 973 F.3d at 444.

### 2. The Magistrate Judge's Report and Recommendation and Gilson's Objections Thereto

#### a. New *Bivens* Context

Applying this two-step test, the Magistrate Judge first determined "that Gilson's claims present a new *Bivens* context as they are meaningfully different from previous" cases in which the Supreme Court recognized a *Bivens* remedy. R. & R. at 9. The Magistrate Judge emphasized the following distinctions between this case and *Bivens*:

(1)  Whereas the defendant officers in *Bivens* were federal narcotics agents, Defendants here are Border Patrol Agents.

(2)  The incident occurred outside a border patrol station, not a private home.

(3)  Whereas the defendants in *Bivens* strip-searched the plaintiff, no strip search occurred here.

*Id. See also Oliva*, 973 F.3d at 442–43 (holding that case "differ[ed] from *Bivens* in several

meaningful ways" where case did not involve "a private home" and defendants "did not . . . strip-search" plaintiff); *Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021) (similar).

Gilson maintains that the Magistrate Judge gave the first six of the seven *Abbasi* factors unduly short shrift.  Obj. at 2–3.  According to Gilson, had the Magistrate Judge applied those factors properly, she would have deemed this case functionally indistinguishable from *Bivens*.  *Id.*  For the following reasons, the Court disagrees.

### i.      The Rank of the Officers Involved

Gilson begins by arguing that the first *Abbasi* factor—the rank of the officers involved—undermines the Magistrate Judge's conclusions because both this case and *Bivens* involved "line federal officers."  *Id.* at 2.

The Court assumes *arguendo* that Defendants are effectively the same rank as the narcotics agents in *Bivens*.  *Cf. Vicente v. United States*, No. 5:20-CV-81, 2021 WL 4452786, at *5 (S.D. Tex. Sept. 29, 2021) (sustaining plaintiff's objection to Magistrate Judge's determination that defendant Border Patrol Agent "was of a different rank" than the agents in *Bivens*; observing that there was "no evidence that [the Border Patrol Agent] was anything more than a 'line-level officer,' like the officers in *Bivens*").  Even proceeding on that assumption, the Supreme Court's recent decision in *Egbert v. Boule*—in which the Court declined to recognize a *Bivens* claim against a U.S. Border Patrol agent—illustrates that even if a lawsuit involves line-level agents, that does not alone situate that case within the same context as *Bivens*.  In her dissenting opinion in *Egbert*, Justice Sotomayor made essentially the same argument that Gilson makes here: that the case was "materially indistinguishable" from *Bivens* because both cases "involved a U.S. citizen bringing a Fourth Amendment claim against individual, rank-and-file law enforcement officers who allegedly violated his constitutional rights by . . . using excessive

force." 142 S. Ct. at 1814–15 (Sotomayor, J., dissenting).  In Justice Sotomayor's view, there were no meaningful "distinctions between line-level officers of the 83 different federal law enforcement agencies with authority to make arrests and provide police protection." *Id.* at 1815. Nevertheless, the *Egbert* majority rejected Justice Sotomayor's argument that the plaintiff's Fourth Amendment claim "d[id] not arise in a new context." *Compare id.* at 1814 (Sotomayor, J., dissenting), *with id.* at 1804 (Opinion of the Court) (agreeing that the plaintiff's "Fourth Amendment claim presented a new context for *Bivens* purposes").

Thus, even assuming that Defendants are "line federal officers," *see* Obj. at 2, that alone does not render this case functionally indistinguishable from *Bivens*. *See also Dyer v. Smith*, No. 3:19-cv-921, 2021 WL 694811, at *3 (E.D. Va. Feb. 23, 2021) (determining that case "present[ed] a 'new context' under *Bivens*" even though the plaintiff was seeking to hold "line-level agents" accountable "for violations of the Fourth Amendment" "just like [the petitioner in *Bivens*]") (quoting *Hicks v. Ferreyra*, 965 F.3d 302, 311 (4th Cir. 2020)).  Because, as discussed below, Gilson has not successfully established that any of the other *Abbasi* factors counsel in favor of recognizing a *Bivens* remedy, any similarity regarding the respective officers' ranks cannot save Gilson's claim from dismissal. *Cf. Strickland v. United States*, 32 F.4th 311, 373–74 (4th Cir. 2022) (concluding that plaintiff's *Bivens* claim "present[ed] a new context" even though two of the *Abbasi* factors weighed in the plaintiff's favor).

### ii.     The Constitutional Right at Issue

Gilson next contends that this case does not present a new *Bivens* context because both this case and *Bivens* involved alleged Fourth Amendment violations.  Obj. at 2.  However, the mere fact that a case implicates the same *constitutional provision* as *Bivens* does not necessarily mean that it presents the same *context* as *Bivens*. *See Hernández*, 140 S. Ct. at 743 ("A claim

may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."); *Byrd*, 990 F.3d at 882 ("[A]lthough Byrd alleges violations of the Fourth Amendment, as did the plaintiff in *Bivens*, Byrd's lawsuit differs from *Bivens* in several meaningful ways."); *Cantú*, 933 F.3d at 422 ("Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'").  Thus, Gilson's observation that this case and *Bivens* both implicate the Fourth Amendment does not undermine the Magistrate Judge's Report and Recommendation.  *See Young v. City of Council Bluffs, Iowa*, 569 F. Supp. 3d 885, 894 (S.D. Iowa 2021) ("[N]ot every excessive force case falls within *Bivens*'s purview."); *Rivera v. Samilo*, 370 F. Supp. 3d 362, 368–69 (E.D.N.Y. 2019) (explaining that "simply because a plaintiff asserts the same constitutional right" as the petitioner in *Bivens* "does not mean the case does not present a new context," emphasizing that the court must not "look[] only to which constitutional amendment is cited," and ultimately concluding that the plaintiff's Fourth Amendment excessive force claim presented a new *Bivens* context); *Ohome v. United States*, No. 1:21-cv-368, 2021 WL 5771147, at *1, 4–5 (N.D. Ga. Dec. 6, 2021) (holding that plaintiff's Fourth Amendment excessive force and false arrest claims presented a new *Bivens* context).

### iii.      The Generality or Specificity of the Official Action

Gilson next claims that the third *Abbasi* factor undermines the Magistrate Judge's report and recommendation because, in both *Bivens* and this case, "federal agents acted contrary to any conceivable description of what their general guidelines as law enforcement officers were."[7]

---

[7] It's not clear that the question of whether "federal agents acted contrary to any conceivable description of what their general guidelines as law enforcement officers were" actually bears on *Abbasi*'s third factor, which examines "the generality or specificity of the official action."  *Compare* Obj. at 2, *with Abbasi*, 137 S. Ct. at 1860.  Usually, when courts assess the third *Abbasi* factor, they examine whether the

Obj. at 2.

As the Supreme Court has explained, however, asking whether "a federal agent supposedly did not act pursuant to his law-enforcement mission 'misses the point.'" *Egbert*, 142 S. Ct. at 1808 (quoting *Hernández*, 140 S. Ct. at 746).  The relevant question is not whether the defendant was "carrying out official duties" when he committed the alleged constitutional violation, but rather "'whether the *Judiciary should alter* the framework established by the political branches for addressing' any such conduct that allegedly violates the Constitution." *Id.* (emphasis added) (quoting *Hernández*, 140 S. Ct. at 746).  As the Court explains below, the answer to the latter question—at least in this case—is no.  *See infra* Sections III.A.2.a.vi & III.A.2.b.

### iv.    The Extent of Judicial Guidance

To support his argument that *Abbasi*'s "judicial guidance" factor supports recognizing his claim, Gilson states:

> There is liability in *Bivens* for the use of force.  In the instant case Mr. Gilson was protesting with his First Amendment right of free speech and then was assaulted. This is the same chain—exercise a right, get assaulted by a Federal Agent.  Judicial guidance till now (or rather *Abbasi*) has been clear, you will be held responsible[.] This factor is therefore the same.

Obj. at 2.  This argument misses the mark for several reasons.  First, judicial guidance does *not* indicate that federal officers who retaliate against individuals who exercise their First Amendment free speech rights "will be held responsible" under *Bivens*.  To the contrary, the Supreme Court has held "that there is *no Bivens* action for First Amendment retaliation."

---

plaintiff challenges a generally applicable policy versus conduct aimed at a single person.  *See, e.g.*, *Vela v. Christian*, No. 3:20-CV-0990, 2021 WL 5701382, at *8 (N.D. Tex. Nov. 5, 2021), *report and recommendation adopted by* 2021 WL 5632058 (N.D. Tex. Dec. 1, 2021) (emphasizing that plaintiff's "claims involve[d] alleged misconduct that [wa]s general in nature and not . . . relegated to a specific prisoner").  Gilson's argument is unmeritorious in any event.

*Egbert*, 142 S. Ct. at 1807 (emphasis added).  Second, the Magistrate Judge did not construe

Gilson's complaint to raise a First Amendment claim, and Gilson's objection does not challenge

the Magistrate Judge's determination that Gilson's operative complaint asserted Fourth

Amendment claims only.  *Compare* R. & R. at 7, *with* Obj. at 1–5.  *See also* Obj. at 2

(acknowledging that Gilson's claims "revolve around the Fourth Amendment").  Thus, Gilson's

attempt to couch his Fourth Amendment claims in First Amendment terms does not advance his

argument.

Gilson raises no other viable argument explaining why there is sufficient "judicial

guidance as to how an officer should respond to the problem or emergency to be confronted"

here,[8] *see* Obj. at 2; *Abbasi*, 137 S. Ct. at 1860, so the Court rejects his assertions.

### v.     The Statutory/Legal Mandate

Gilson next maintains that the fifth *Abbasi* factor—"the statutory or other legal mandate

under which the officer was operating," *Abbasi*, 137 S. Ct. at 1860—supports recognizing a

*Bivens* remedy here.  Obj. at 3.  Gilson begins by observing that

> Federal Bureau of Narcotics (FBN) officers are now Drug Enforcement Officers.
> The FBN were [sic] under the Department of the Treasury, now DEA is under the
> Department of Justice.  The Border Patrol was created under the Department of
> Labor in 1924 until 2003 when it moved to Customs and Border Protection.

Obj. at 3.  Thus, maintains Gilson, both Defendants here and the officers in *Bivens* "were

operating under the same type of federal agency and appointment."  *Id.*  Gilson insists that

"[t]here is no meaningful distinction" between the Border Patrol and the Federal Bureau of

Narcotics because "both are/were law enforcement branches that started under a non-law

enforcement agency and were transferred in a reorganization to a law enforcement specific

---

[8] Gilson notes in passing that "[t]here is judicial guidance against entering a home without probable cause.  This results in suppression."  Obj. at 2.  That observation is irrelevant, as Gilson does not allege that Defendants entered his home with or without probable cause.  *See* Am. Compl. at 1–3.

agency." *Id.*

The Court agrees with the U.S. District Court for the Southern District of Texas's

decision in *Vicente v. United States*, which rejected a very similar argument.  2021 WL 4452786,

at *6.  Like Gilson, the plaintiff in *Vicente* argued "that Customs and Border Protection and the

Drug Enforcement Administration should be viewed as non-distinct agencies for the 'new

context' inquiry because they operate under the same legal mandate." *Id.*  The *Vicente* Court

disagreed, noting that even though "[l]aw enforcement officers across many different agencies

are empowered to seize and arrest individuals for unlawful activity," "that similarity is not

enough to extend *Bivens*" to Border Patrol Agents. *Id.*  As the Fifth Circuit has held, the fact that

a case involves "different officers from a different agency" than the bureau at issue in *Bivens*

indicates that the subsequent case arises in a new context. *Cantú*, 933 F.3d at 423. *Compare*

*Egbert*, 142 S. Ct. at 1815 (Sotomayor, J., dissenting) (arguing that the fact that *Egbert* involved

"a CBP agent rather than a Federal Bureau of Narcotics agent" was "not the sort of 'meaningful

distinction' that [the Supreme Court's] new-context inquiry [wa]s designed to weed out"), *with*

*id.* at 1804 (Opinion of the Court) (rejecting Justice Sotomayor's argument and concluding that

the case "presented a new context for *Bivens* purposes").

### vi.      The Risk of Judicial Intervention

Finally, the sixth *Abbasi* factor—the risk of judicial intervention—counsels against

extending a *Bivens* remedy here.  "[I]mmigration matters"—such as enforcing immigration laws

and operating immigration facilities—"are a 'sovereign prerogative of the executive and

legislative branches of government.'" *Delta Talent, LLC v. Wolf*, 448 F. Supp. 3d 644, 650

(W.D. Tex. 2020) (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).  Recognizing a *Bivens*

remedy against Border Patrol agents under the facts of this case could therefore encroach upon

executive and legislative prerogatives.  *See De La Paz v. Coy*, 786 F.3d 367, 377 (5th Cir. 2015)

("Despite its repeated and careful attention to immigration matters, Congress has declined to

authorize damage remedies against individual agents involved in civil immigration enforcement.

The institutional silence speaks volumes and counsels strongly against judicial usurpation of the

legislative function.").  Affording plaintiffs a damages remedy against Border Patrol agents

could also undermine national security.  *See Hernández*, 140 S. Ct. at 747 ("Since regulating the

conduct of agents at the border unquestionably has national security implications, the risk of

undermining border security provides reason to hesitate before extending *Bivens* into this

field."); *Evans v. U.S. Border Patrol Agents*, No. 7:19-cv-00358, 2020 WL 9066054, at *8 (S.D.

Tex. July 20, 2020), *report and recommendation adopted by* 2021 WL 1215843 (S.D. Tex. Mar.

31, 2021) (interpreting *Hernández* to foreclose plaintiff's claim that Border Patrol agent used

excessive force when arresting plaintiff); *Egbert*, 142 S. Ct. at 1804-05.

Gilson bases his argument to the contrary on the Ninth Circuit's decision in *Lanuza v.

Love*, 899 F.3d 1019 (9th Cir. 2018).  Obj. at 3.  The *Lanuza* Court held that "a *Bivens* remedy

[wa]s available" where "a government immigration attorney intentionally submitted a forged

document in an immigration proceeding to completely bar" the plaintiff "of his right to apply for

lawful permanent residence."  899 F.3d at 1028, 1034.  In the paragraph of the opinion from

which Gilson quotes, *see* Obj. at 3, the Ninth Circuit emphasized that recognizing a new *Bivens*

remedy under the facts of *Lanuza* would not create "a 'deluge' of potential claimants seeking to

avail themselves of this particular *Bivens* action."  899 F.3d at 1033 (quoting *Davis v. Passman*,

442 U.S. 228, 248 (1979)).  As the Ninth Circuit reasoned: "Recognizing a *Bivens* action here

will produce widespread litigation only if ICE attorneys routinely submit false evidence, which

no party argues is the case.  And if this problem is indeed widespread, it demonstrates a dire need

for deterrence, validating *Bivens*'s purpose."  899 F.3d at 1033.

Assuming (without deciding) that the Fifth Circuit would follow the Ninth Circuit's holding in *Lanuza*, the Court has no similar assurance that recognizing Gilson's proposed *Bivens* claim would not generate a wave of litigation.  Whereas there is little evidence that government attorneys routinely forge documents in immigration cases, *id.* at 1033, numerous plaintiffs have attempted to assert excessive force and/or false arrest claims against Border Patrol Agents under *Bivens*.  *See, e.g., Egbert*, 142 S. Ct. at 1801–02; *Hernández*, 140 S. Ct. at 739–40; *Mendez v. Poitevent*, 823 F.3d 326, 329–30 (5th Cir. 2016); *Ramirez v. United States*, 999 F.2d 1579 (5th Cir. 1993); *Vicente*, 2021 WL 4452786, at *1–2; *Evans*, 2020 WL 9066054, at *1.  Congress— not this Court—is the institution in the best position to decide whether to open the floodgates to such potentially voluminous litigation.  *See Egbert*, 142 S. Ct. at 1804–05 ("Congress is better positioned to create remedies in the border-security context . . . . [T]he Judiciary is comparatively ill suited to decide whether a damages remedy against any Border Patrol agent is appropriate.").

In any event, *Lanuza* is distinguishable in other critical respects.  To support its conclusion that recognizing a *Bivens* remedy in *Lanuza* would not amount to "an improper intrusion into the decisions of other government branches," the Ninth Circuit emphasized that "more often than not, the Judicial Branch, not Congress or the Executive, is responsible for remedying circumstances where a court's integrity is compromised by the submission of false evidence."  899 F.3d at 1032–33.  "Thus," the Ninth Circuit reasoned, "it falls within the natural ambit of the judiciary's authority to decide whether to provide a remedy for the submission of false evidence in an immigration proceeding."  *Id.* at 1033.  By contrast, the Supreme Court has determined that the Judiciary lacks a comparable level of institutional competence to craft

standards governing Border Patrol agents' conduct.  *See, e.g.*, *Hernández*, 140 S. Ct. at 747

("Since regulating the conduct of agents at the border unquestionably has national security

implications, the risk of undermining border security provides reason to hesitate before

extending *Bivens* into this field.").  Thus, *Lanuza* does not counsel in favor of recognizing a

*Bivens* remedy here.

### vii.   Conclusion

The Court thus rejects Gilson's conclusion that the Magistrate Judge improperly applied

the *Abbasi* factors.  On balance, those factors establish that this case presents a new *Bivens*

context.  The Court overrules Gilson's objections to the Magistrate Judge's Report and

Recommendation to that extent.

### b.   Special Factors

After determining that this case involves a new context, the Magistrate Judge then

concluded that "special factors counsel hesitation in extending a *Bivens* remedy against"

Defendants here.  R. & R. at 10.

### i.   Separation of Powers Concerns

The Magistrate Judge first reasoned that "the Supreme Court has held, even in 'more

"conventional" excessive-force claim' cases that 'the Judiciary is comparatively ill suited to

decide whether a damages remedy against *any* Border Patrol agent is appropriate.'"  *Id.* (quoting

*Egbert*, 142 S. Ct. at 1805).  The Magistrate Judge thus concluded "that courts are not competent

to authorize a damages action against Border Patrol agents without affirmative action by

Congress." *Id.*

Gilson does not explicitly object to this aspect of the Magistrate Judge's analysis.  *See*

Obj. at 1–5.  Nothing about the Magistrate Judge's special factors discussion strikes the Court as

"clearly erroneous" or "contrary to law."  *See E.R.*, 573 F. Supp. 3d at 1129.  The Court thus

accepts this portion of the Magistrate Judge's Report and Recommendation as well.

<b>ii.        Alternative Remedial Structure</b>

The Magistrate Judge also concluded that the availability of an alternative remedial

structure—namely, U.S. Customs and Border Protection's customer complaint programs—

counseled against extending a *Bivens* remedy.  R. & R. at 10–12.  *See also Egbert*, 142 S. Ct. at

1804 ("[A] court may not fashion a *Bivens* remedy if Congress already has provided, or has

authorized the Executive to provide, 'an alternative remedial structure.'").  The Magistrate Judge

noted that "CBP provides Passenger Service Representatives, Comment Cards, a CBP INFO

Center, and a program where port directors and supervisors personally respond to telephone and

verbal complaints."  R. & R. at 11 (quoting Mot. at 11).  The Magistrate Judge further explained

that "'Gilson has the option of calling the Station directly to make a complaint,' and that 'CBP

will take appropriate action against the employee' facing allegations of 'misconduct or

discrimination.'"  *Id.* (quoting Mot. at 12).

Gilson objects that he "cannot imagine how a 'complaint' system that provides for

comment cards can be conceived as an alternative remedy to damages."  Obj. at 4.  The Supreme

Court, however, has already reached the contrary conclusion.  In *Egbert v. Boule*, the Supreme

Court declined to recognize a Fourth Amendment *Bivens* claim against a Border Patrol Agent in

part because the Border Patrol's grievance procedures created a sufficient alternative remedy

structure.  142 S. Ct. at 1806–07.  As the *Egbert* Court explained, "[s]o long as Congress or the

Executive has created a remedial process that it finds sufficient to secure an adequate level of

deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy."

*Id.* at 1807.  "That is true even if a court independently concludes that the Government's

procedures are 'not as effective as an individual damages remedy.'" *Id.* at 1807 (quoting *Bush v. Lucas*, 462 U.S. 367, 372 (1983)).  Thus, whether Gilson believes that the Border Patrol's existing grievance procedures provide an adequate substitute for monetary damages is irrelevant. *Cf. United States v. Stanley*, 483 U.S. 669, 683 (1987) (holding that "it is irrelevant to a 'special factors' analysis whether the laws currently on the books afford" the plaintiff "an 'adequate' federal remedy for his injuries.").

Gilson also complains that even though a jury ultimately acquitted him of committing unlawful conduct during his protest, "[n]o one from the agency that still employs the agents that assaulted him has reached out to contact him" regarding whether Defendants committed misconduct.  Obj. at 4.  That is irrelevant, however, as the Supreme Court has "never held that a *Bivens* alternative must afford rights to participation" in the agency's alternative remedy structure.  *Egbert*, 142 S. Ct. at 1806.

Finally, Gilson asserts that resorting to the Border Patrol's customer complaint system would be futile because the agency would simply ignore Gilson's complaint.  Obj. at 4 ("Why would any Court believe that the an [sic] agency that prosecutes an individual that results in a jury's finding of not guilty would listen to the person that they referred to the United States Attorneys' office to attempt to cover their violent assault[?] . . . . Clearly the United States Border Patrol's comment card was filed in 'file 13.'").[9]  However, what matters is not whether the plaintiff will ultimately *succeed* in obtaining redress, but rather whether the alternative remedy structure is *available*.  *See, e.g.*, *Biron v. Upton*, No. 4:15-CV-205, 2020 WL 85146, at *7–8 (N.D. Tex. Jan. 7, 2020) (rejecting argument that administrative remedy program was a "farce;" emphasizing that "it is the *availability* of the alternative remedy that is key, not whether

---

[9] "'File 13' is a euphemism for the trash can."  https://en.wikipedia.org/wiki/File_13.

the person is able to ultimately succeed under that remedy") (emphasis added); *Causey v. Carlton*, No. 3:18-CV-181, 2020 WL 1500020, at *3 (S.D. Miss. Feb. 11, 2020) ("That [the plaintiff's] administrative complaints were ultimately denied does not mean that the program was not an alternative or meaningful remedial structure, nor does it automatically entitle him to monetary damages under *Bivens*.").  The Court therefore accepts the Magistrate Judge's conclusion that CBP's complaint programs provide an alternative remedy structure that defeats Gilson's *Bivens* claim.

### 3.    Conclusion

In sum, the Magistrate Judge properly concluded that Gilson's claims arise in a new *Bivens* context and that special factors counsel against recognizing a *Bivens* cause of action in this case.  The Court therefore overrules Gilson's objections and accepts the Magistrate Judge's Report and Recommendation.

## B.    Qualified Immunity

Besides determining that Gilson had no cause of action under *Bivens*, the Magistrate Judge also concluded that qualified immunity barred Gilson's claims. R. & R. at 12–13.  Because the Court agrees that Gilson has no *Bivens* remedy, the Court need not consider the Magistrate Judge's alternate recommendation to dismiss the case on qualified immunity grounds.  *See Byrd*, 990 F.3d at 882 ("Because we do not extend *Bivens* to [the plaintiff's] lawsuit, we need not address whether [the defendant] is entitled to qualified immunity.").

## C.    Leave to Amend

In his response to Defendants' Motion to Dismiss, Gilson requested leave to amend his complaint if the Court ultimately dismissed his claims.  Resp., ECF No. 31, at 5.  Although the Report and Recommendation advises the Court to dismiss Gilson's complaint, it does not

explicitly address Gilson's request to replead.  *See* R. & R. at 1, 14.

Gilson's objection to the Report and Recommendation does not challenge the Magistrate Judge's implicit conclusion that Gilson may not amend his complaint a second time.  *See* Obj. at 1–5.  The Court will therefore accept that conclusion unless it is clearly erroneous or contrary to law.  *See E.R.*, 573 F. Supp. 3d at 1129.

Ordinarily, when granting a Rule 12(b)(6) motion, courts freely grant plaintiffs leave to amend the complaint instead of dismissing the case entirely.  *E.g.*, *Doe v. Baylor Univ.*, 313 F. Supp. 3d 786, 793 (W.D. Tex. 2018) ("[T]here is a strong presumption in favor of allowing amendment rather than dismissal, and '[l]eave to amend should be freely granted when justice requires.'") (quoting *Fin. Acquisition Partners, L.P. v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006)).  However, "a district court may refuse leave to amend if the filing of the amended complaint would be futile, *i.e.*, 'if the complaint as amended would be subject to dismissal.'"  *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009)).  Given the Supreme Court's consistent reluctance to recognize new *Bivens* remedies (especially in the border security context), *see, e.g.*, *Egbert*, 142 S. Ct. at 1799, 1803; *Hernández*, 140 S. Ct. at 747, as well as Gilson's failure to explain how amending his allegations would cure the defects identified above, *see* Resp. at 1–5; Obj. at 1–5, the Magistrate Judge's refusal to grant Gilson leave to replead was neither clearly erroneous nor contrary to law.  *Cf. Evans*, 2020 WL 9066054, at *14 (holding that allowing plaintiff to amend *Bivens* claim against Border Patrol agents would be futile because the plaintiff "lack[ed] a *Bivens* remedy").  The Court accordingly denies Gilson leave to replead.

## IV.    CONCLUSION

The Court thus **ACCEPTS** the "Report and Recommendation of the Magistrate Judge" (ECF No. 35).

The Court **OVERRULES** "Plaintiff's Objection to the Report and Recommendation of the United States Magistrate Judge in Doc. 35" (ECF No. 36).

The Court **GRANTS** "Defendants' Second Motion to Dismiss" (ECF No. 30).

The Court **DENIES** Gilson leave to further amend his complaint.

The Court **DIRECTS** the Clerk to **CLOSE** the case.

**So ORDERED and SIGNED this 11th day of August 2022.**

_____
**DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE**